SAVOIE, Judge,
dissenting.
I respectfully dissent.
It is well settled in Louisiana that each case involving a train-vehicle collision should be tried on its own facts and circumstances. Also, the party’s negligence is a matter of factual determination to be followed by application of proper law. Odom v. Hooper, 273 So.2d 510 (La.1973); Buchholz v. Dealers Transport Company, 399 So.2d 1303 (La.App. 4th Cir.1981). It is equally well settled that factual determinations by the trial court are not to be disturbed in the absence of clear (manifest) error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); West v. Jones, 411 So.2d 532 (La.App. 1st Cir.1982); Rahm v. Exxon Corp., 399 So.2d 676 (La.App. 1st Cir.1981).
The unrebutted evidence presented by the plaintiffs supports the trial court’s finding of negligence on the part of Missouri Pacific Railroad Company (Mo-Pac). I quote from the trial court’s oral reasons for judgment:

“In this case, the court has heard the testimony of the witnesses and it appears that there were special circumstances attendant in this case. We have an unlighted intersection. There are no lights at all. You had a railroad ear which was blocking the intersection wherein you *1084 could see, under the car, approaching traffic. It seems to me, under those circumstances, even though there was a crossing or cross buck sign located at the intersection, in view of the fact it was not a well-lighted intersection and other circumstances attendant thereto, that the railroad should have at least had a flagman or someone out there, and in this instance, I think the plaintiff had indeed made a prima facie case of negligence against the railroad which, of course, can be rebutted on the presentation of the railroad’s case.”
$ $ $ sfc * s}:
I find no manifest error in the trial court’s determination as to MoPac’s negligence.
The trial court next addressed the question of contributory negligence, stating:
* * * * *
“The big problem with the plaintiffs’ case is one of contributory negligence. ... I think the deceased was, of course, required to operate his vehicle as a reasonably prudent person. I don’t know whether his operation of his vehicle on the night in question of this tragic accident was due to the fact he had had too many drinks or not. It may have very well been due to fatigue. It may have been due to other distractions, but there isn’t any question in my mind after hearing the plaintiffs’ case that the deceased was not paying attention to the road ahead and to the warning signals. The other driver who was on the opposite side of the railroad did come to a stop and was waiting for the train, and it seems to me that in this case, Mr. Hodges, if he had been paying attention, would have seen this big white tank-car ahead of him astraddle on the tracks. Now, I readily understand it was not the ideal situation, because as I said before, it had headlights that were showing underneath the car and there was no lighting in the area. Assuming he had his headlights on and assuming that he was paying attention and keeping his car under control, he should have seen the railroad car blocking the tracks.” (Emphasis ours).
* * * * * *
I do not find evidence in the record to substantiate a holding of contributory negligence. First, no evidence is presented to support a contention that the decedent had “too many drinks” or that he was fatigued. On the contrary, the testimony of Miss Renee Glaser who rode with him from Baton Rouge to New Roads was that his driving was “normal”. There was no testimony that decedent’s driving was impaired. Testimony under both direct and cross-examination supports the opposite conclusion. Rocky DiBenedetto’s testimony also supports this conclusion. Secondly, the trial court’s conclusion that because DiBenedetto was able to see the railroad car, the decedent should have been able to see it, is contrary to the evidence. By DiBenedetto’s own testimony, he:
1. Drove this road daily and knew the crossing was dangerous.
2. Actually knew of the train’s existence across La. Hwy. 987-3 because he had paralleled the railroad track prior to turning onto La. Hwy. 987-3.
3. Saw the jumbo tank-car in his lights due to the inclined approach from his side of La. Hwy. 987-3.
4. Had no car across the track from him with its lights on.
5. Had turned onto La. Hwy. 987-3 only 81 feet before the track
Contrast this with the plaintiffs’ evidence of the decedent’s position:
1. Decedent was not familiar with the danger of this crossing.
2. Did not actually know (or is presumed not to have actually known) of the existence of the train.
3. Could not see the jumbo tank-car because the lights from DiBenedetto’s vehicle were shining toward decedent from below the “high rise” tank-car.
4. The unobstructed headlights of DiBenedetto’s vehicle gave the impression of an unobstructed highway ahead.
*1085 5.Was traveling down a straight road with no apparent obstruction.
At this stage of the proceedings, the facts do not support by a preponderance of the evidence, a finding of contributory negligence.